```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

JESUS VALDES-SANTOVENIA,

    Petitioner,

  v.                                   Case No.:  2:25-cv-01063-JES-DNF

GARRETT RIPA et al.,

    Respondents.

_____

## OPINION AND ORDER

Before the Court is Petitioner Jesus Valdes-Santovenia's Petition for a Writ of Habeas Corpus (Doc. #1), the government's response (Doc. #8), and Valdes-Santovenia's reply (Doc. #9).

**A. Background**

Valdes-Santovenia is a native of Cuba.  The Department of Homeland Security (DHS) paroled Valdes-Santovenia into the United States on October 13, 2004, and gave him lawful permanent resident status on May 4, 2006.  Valdes-Santovenia was convicted of a drug trafficking offense in 2011, placed in removal proceedings, and ultimately ordered removed to Cuba.  The government was unable to execute the removal order, and Valdes-Santovenia remained in the country under an order of supervision.  On November 13, 2025, Valdes-Santovenia reported to an Immigration and Customs Enforcement (ICE) office as required by the order, and he filed motions with the immigration court to reopen his case and stay removal.  On November 16, 2025, ICE revoked the order of

supervision, arrested Valdes-Santovenia, and detained him in Alligator Alcatraz.

Valdes-Santovenia claims he is no longer subject to lawful removal because his drug trafficking charge is no longer a deportable offense. That argument is the basis of his motions pending with the immigration court. Valdes-Santovenia's habeas petition challenges the legality of his detention under the Due Process Clause of the Fifth Amendment, Zadvydas v. Davis, 533 U.S. 678 (2001), and the Administrative Procedures Act (APA).

**B. Jurisdiction**

Before addressing the merits of Valdes-Santovenia's claim, the Court must address its jurisdiction. The respondents first argue Valdes-Santovenia lacks standing to bring an APA claim. They cite Trump v. J.G.G, 604 U.S. 670 (2025). In J.G.G., the Supreme Court held that challenges to immigration detention "must be brought in habeas." 604 U.S. at 672. J.G.G. is inapposite here. The J.G.G. plaintiffs initially sought habeas relief among other actions but dismissed their habeas claims. Because Valdes-Santovenia appropriately challenges his detention in habeas, J.G.G. does not require dismissal of this action.

The respondents also argue two sections of the Immigration and Nationality Act (INA) strip the Court of jurisdiction over this action. They first point to a provision that bars courts from hearing certain claims. It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory

> provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). The zipper clause only applies to claims requesting review of a removal order. See Madu v. U.S. Attorney Gen., 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Valdes-Santovenia does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. But his first argument—discussed below—does ask the Court to review his removal order. Valdes-Santovenia is ultimately challenging the legality of his detention, so the INA does not strip the Court of jurisdiction over this action. That said, the Court is cognizant of the limits of its jurisdiction.

**C. Legality of Detention**

Valdes-Santovenia's petition argues his detention is unlawful for three reasons. First, Valdes-Santovenia claims he is no longer deportable because the statute of his conviction is no longer a deportable offense. In 2011, Valdes-Santovenia was convicted of

manufacturing marijuana in violation of Florida Statute § 893.135(1)(A)(2). An immigration court found him deportable under 8 U.S.C. § 1227(a)(2)(B)(i) because he was convicted of a felony "relating to a controlled substance (as defined in section 802 of Title 21)[.]"

In Said v. U.S. Atty. Gen., the Eleventh Circuit held that because Florida law defines marijuana more broadly than federal law, crimes based on the Florida definition do not disqualify noncitizens from cancellation of removal. 28 F.4th 1328, 1330 (11th Cir. 2022). Valdes-Santovenia is currently seeking cancellation of removal in immigration court based on Said. If he loses there, he may appeal to the Eleventh Circuit. But in the meantime, he is subject to a valid removal order, and this Court does not have jurisdiction to review it. If the removal order is canceled and Valdes-Santovenia remains detained, he may renew his request for habeas relief.

Valdes-Santovenia next claims his detention violated the Due Process Clause of the Fifth Amendment because removal is not foreseeable. "Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes

administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

In Zadvydas, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id.  Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

Id.

In his petition, Valdes-Santovenia claims his removal is not foreseeable because Cuba does not ordinarily issue travel documents to expats and it is not possible for him to travel to any other country. But elsewhere in the petition, he claims his removal "could be imminently effectuated." (Doc. #1 at 3).

Likewise, Valdes-Santovenia's Motion for Stay of Removal pending before the immigration court is based on "the urgent and imminent risk of [his] removal[.]" (Doc. #1-3 at 16). What is more, Valdes-Santovenia's reply brief abandons his Zadvydas claim by stating he asks the Court to review the other two issues raised in his petition, but not the length of his detention. (Doc. #9 at 3). At bottom, Valdes-Santovenia has not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future, so he is not entitled to relief under Zadvydas. If it becomes apparent that ICE cannot remove Valdes-Santovenia in within a reasonable time, he may renew his request for habeas relief.

Finally, Valdes-Santovenia asserts his detention violates the APA, which requires courts to "hold unlawful and set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706. Valdes-Santovenia argues the revocation of his supervised release was arbitrary and capricious because he was in full compliance with the terms of the order of supervision, the respondents failed to articulate a reason for the revocation, and DHS failed to follow its own procedures when issuing the Notice of Custody Determination.

8 C.F.R. § 241.4 sets out the procedures for continued detention of an immigration detainee after the removal period.

Valdes-Santovenia cites mostly to subsections of the rule governing initial custody determinations and decisions to release detainees, but those are not applicable here. Just one part of his argument relies on the subsection that governs revocation of release.

Valdes-Santovenia argues the deportation officer who ordered his re-detention failed to consider the enumerated reasons an official may revoke release:

> (i) The purpose of release have been served; (ii) The alien violates any conditions of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

§241.4(l)(2). But as Valdes-Santovenia acknowledges, officials revoked his release because they decided it is appropriate to enforce a removal order. (See Doc. #1 at 4) ("ICE indicated…they would attempt to find a third country for removal while the Respondent was in detention this time."). That is permissible reason to revoke release. Valdes-Santovenia has not shown the respondents failed to comply with the applicable rules here.

Accordingly, it is hereby

**ORDERED**:

Petitioner Jesus Valdes-Santovenia's Petition for a Writ of Habeas Corpus (Doc. #1) is **DENIED**. The Clerk is **DIRECTED** to

terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE and ORDERED** at Fort Myers, Florida, this __31st__ day of December 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies:
Counsel of Record